UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

INTERNATIONAL CRUISE SHOPS, LTD.,
STARBOARD CRUISE SERVICES, INC.,
and HOLLAND AMERICA LINE,
      Petitioner/Defendant,

vs.

RAFAEL DE JESUS RINCONES BOHORQUEZ,

      Respondent/Plaintiff.

_____/

## MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AGAINST RESPONDENT, RAFAEL DE JESUS RINCONES BOHORQUEZ

Petitioners/Defendants, INTERNATIONAL CRUISE SHOPS, LTD., STARBOARD CRUISE SERVICES, INC., and HOLLAND AMERICA LINE (hereinafter "Petitioners"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 65(b) as well as Section 10A of the Court's Administrative Procedures for Electronically Filing Documents, hereby respectfully request that this Court enter, without notice to Respondent, RAFAEL DE JESUS RINCONES BOHORQUEZ ("Respondent"), an individual, a Temporary Restraining Order (TRO) against him, freezing his assets – including the Wells Fargo bank account ("assets") maintained by him, for him, or by any entity under his control, and in support thereof state as follows:

### FACTUAL BACKGROUND

On January 2, 2024, Respondent filed his initial Complaint against Petitioners alleging that on August 18, 2022, while he was employed as a seaman onboard the *M/V Zuiderdam*, he slipped

and fell in his cabin bathroom resulting in a back injury which ultimately led to permanent paralysis including partial paraplegia. *See Complaint, Rafael de Jesus Rincones v. International Cruise Shops, LTD, et al., Case No. 1:24-cv-20330-Damian, ECF No.1 (S.D. Fla. Jan 26, 2024),* attached hereto as Exhibit 'A.' Since the initial injury, and throughout the course of the litigation, Respondent constantly presented himself as an individual who was disabled and partially paralyzed. At both his deposition and at mediation, Respondent emphasized the difficulties he faced as a partial paraplegic and how his partial paraplegia would continue to affect him for the rest of his life. *See Deposition Transcript of Rafael De Jesus Rincones*, attached hereto as Exhibit 'B'.

Respondent's representations included testimony at his deposition of an inability to walk without assistance devices, such as Knee Ankle Foot Orthosis ("KAFO's"), which provide leg stability. *See* Ex. B. Additionally, Respondent claimed that he relied on the use of a walker, or a wheelchair because he was not able to ambulate on his own. *See* Ex. B. Respondent further testified that he "lost" his legs and that he could only walk 350 feet with the walker and KAFO assistance at a time. *See* Ex. B, p. 174, 180. Respondent further testified that he could only drive with hand controls. *See* Ex. B, p. 174. Additionally, he testified that he lost not only his legs but his bowel, bladder, and suffered from erectile dysfunction and so could also no longer have a family. *See* Ex. B, p. 191.

At the mediation, which was held on September 11, 2024, Respondent appeared wearing his KAFO's and using a walker to assist him in ambulating. *See Affidavits of Rick Wodarski and Allison Kelly*, attached hereto as Exhibits 'C' and 'D', respectively. He was also accompanied by his home health aide who he reported is with him for 12 hours a day to help him with his activities of daily living. *See* Ex. C, ¶11 and Ex. D, ¶9. Additionally, Respondent ensured to set a timer on

his Apple Watch to alert him every hour that he needed to get up and use the bathroom for fear of soiling himself due to his incontinence. *Id.*

Relying on the medical records, surveillance of Respondent, Respondent's own representations at his deposition, his protected status as a seaman and Petitioners' investigation into Respondent's alleged injuries, Petitioners agreed to settle Respondent's case. *See* Ex. C, ¶12,13. Petitioners' agreement to settle was based entirely on the belief that Respondent's injuries and the disability that Respondent was showing were severe, lifelong, and life altering. *Id*. On September 23, 2024, Petitioners and Respondent executed a mediated settlement agreement in which the Petitioners/Defendants agreed to pay Respondent six million U.S. dollars ($6,000,000) for their release from liability in the action. On October 7, 2024, upon completion of the settlement, Respondent was repatriated to his home country of Colombia. The Order of Dismissal was entered on October 17, 2024 dismissing the case with prejudice.

On January 15, 2025, Respondent's ex-girlfriend, Ms. Emily Gamboa, contacted the Petitioners regarding an alleged fraud. *See* Ex D, ¶16-21. During her conversation with Allison Kelly of USMC, Ms. Gamboa revealed that Respondent was not doomed to suffer from lifelong paralysis. *Id.* Ms. Gamboa stated that once the settlement funds were disbursed to Respondent, and he was repatriated back home to Colombia a few weeks later, Respondent made a miraculous and instantaneous recovery and no longer suffered under the extreme disability that was portrayed just a couple weeks prior during mediation. *Id*. Specifically, Ms. Gamboa stated that as soon as Respondent landed, he took off his KAFO assistance devices and was able to walk unassisted. *Id.* In fact, Respondent no longer needed the KAFO's, walker, crutches, or wheelchair to get around. Respondent was miraculously able to walk, run, and even drive without any assistance. *Id.* Further

Ms. Gamboa stated that Mr. Rincones was in full control of his bowels and did not have any erectile disfunction or issues in the bedroom at all. *Id.*

Ms. Gamboa then provided further evidence of Respondent's impossible recovery with a video of Respondent from December 24, 2024 where he can be seen dancing on his own, bending his knees, with no support and no assistance merely two months after the mediation. *See video of Rafael De Jesus Rincones from December 24, 2024* attached as Exhibit 'E'. A once-disabled Respondent was suddenly able to dance unassisted during a holiday celebration Christmas Day. After speaking to Ms. Gamboa, Petitioners discovered photos on Respondent's personal Facebook page, which is available for public viewing, showing Respondent walking and driving a normal vehicle, all without assistance devices or the assistance of others. *See* Ex. D, ¶23, Ex.1.

Based on all of this newly discovered information, Petitioners will be filing a Motion to Set Aside the Settlement Agreement and to Vacate the Order of Dismissal stemming from the settlement. However, in fear that Respondent will conceal or remove the settlement funds from the United States and out of the Court's jurisdiction, Petitioners seek an emergency restraining order to freeze Respondent's U.S. Bank Accounts and enjoining him from removing any of the settlement funds from the United States until the Motion to can be heard.

## MEMORANDUM OF LAW

### I. Legal Standard

To obtain a temporary restraining order, a party must demonstrate (1) a substantial likelihood of success on the merits, (2) an inadequate remedy at law, (3) the likelihood of irreparable harm absent the injunction, and (4) that injunctive relief will serve the public interest. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981); *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974); *Texas v. Seatrain Int'l, S. A.*, 518 F.2d 175, 179

(5th Cir. 1975); *Bonner v. Prichard*, 661 F.2d 1206, 1210 (11th Cir. 1981)(adopting as binding precedent all the former Fifth Circuit decisions prior to 1981).

Additionally, a Court may only issue a temporary restraining order without notice to the other party if:

> A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

*Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974).

## II. A Temporary Restraining Order to Freeze Respondent's Assets is Warranted

A temporary restraining order ("TRO") serves "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981). Generally, District Courts lack the authority to enjoin a defendant's assets before a proper judgment on the claims. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). A preliminary asset-freeze order is an extraordinary remedy. *Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308, 340, 119 S. Ct. 1961, 1978 (1999). However, the Eleventh Circuit has previously exercised its "inherent power to freeze a defendant's assets to ensure the availability of equitable relief." *Astrove v. Doe*, CASE NO. 22-CV-80614-RAR, 2022 U.S. Dist. LEXIS 129067, at *2-3 (S.D. Fla. June 17, 2022)( and cases cited therein). Accordingly, courts "routinely issue" such relief "when assets can be held or moved by

third parties on behalf of a defendant, to enforce equitable relief that extends to those third parties." *Id*. at *34. Here, this court should enter the Temporary Restraining Order to ensure equitable relief can be granted to Petitioners.

Petitioners are entitled to a Temporary Restraining Order if they show that they have (1) a substantial likelihood of success on the merits, (2) an inadequate remedy at law, (3) the likelihood of irreparable harm absent the injunction, and (4) that injunctive relief will serve the public interest. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981); *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974); *Texas v. Seatrain Int'l, S. A.*, 518 F.2d 175, 179 (5th Cir. 1975); *Bonner v. Prichard*, 661 F.2d 1206, 1210 (11th Cir. 1981)(adopting as binding precedent all the former Fifth Circuit decisions prior to 1981). Here, Petitioners are able to show all four elements entitling them to issuance of a temporary restraining order.

First, Petitioners are likely to succeed on the Motion to Set Aside the Settlement and to Vacate the Order of Dismissal as the premise of the settlement was clearly based on the procured fraud by Respondent. The facts, as set forth above, make clear that Petitioners were induced to settle because Respondent fraudulently misrepresented the severity of his injuries throughout litigation and through mediation. The statements Ms. Gamboa provided to Petitioners is further corroborated by photos and videos highlighting Respondent's fraud and his disregard for the Court. Under these circumstances, a Rule 60 motion to vacate the judgment is appropriate. Additionally, this Court has "the inherent power [to] vacate its own judgment upon proof that a fraud has been perpetrated upon the court." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132 (1991) (holding federal courts have "the power to conduct an independent investigation [to] determine whether it has been the victim of fraud").

Next, Petitioners' only true remedy is to have the settlement funds returned via setting aside the settlement agreement, which is an equitable remedy, not a remedy at law. If Respondent is able to move the money outside of the United States, it is likely he will continue to spend it or move it to Columbia to ensure there is nothing to return. While Petitioners would be severely prejudiced if Respondent dissipates the funds wrongfully taken from Petitioners, Respondent faces no such prejudice. Thus, an order enjoining Respondent from moving his assets will, at worst, delay him from transferring his ill-gotten gains overseas. At best, will help maintain the *status quo* for Petitioners to recover the fraudulently obtained settlement award.

Finally, the requested injunctive relief serves the public interest of preventing a successful fraud and ensuring the integrity of out-of-Court dispute resolutions. This order furthers the public policy of the state favoring alternative forms of dispute resolution. A joint stipulation for dismissal with prejudice "receives its legitimating force from the fact that the parties consented to it." *Norfolk S. Corp.*, 371 F.3d at 1288. Just as consent procured by fraud is invalid, so is a settlement reached through those means. Throughout the litigation and at mediation, Respondent consistently appeared to suffer from incomplete paralysis. Respondent failed to disclose the true nature and extent of his injuries throughout the proceedings, instead intentionally hiding his true recovery from his doctors and experts to procure a higher settlement. Allowing misconduct of this kind at this scale to go unaddressed is discordant to the cooperative and transparent environment mediation and this Court seeks to foster.

Moreover, Respondent abused his special status as a seaman for his own pecuniary benefit. "Congress has generally sought to safeguard seamen's rights." *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246, 63 S. Ct. 246, 251 (1942). In a contract between master and seaman, the seaman is treated "as courts of equity are accustomed to treat young heirs, dealing with their expectancies,

wards with their guardians, and cestuis que trustent with their trustees." *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246, 63 S. Ct. 246, 251 (1942). As stated by the Supreme Court of the United States,

> If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable.

*Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246, 63 S. Ct. 246, 251 (1942). Respondent leveraged his special status as a ward of admiralty and the court for personal gain. Letting this abuse of seaman status go unchecked will foster in an era of excessive fraudulent claims by seaman seeking massive payouts for unprovable disabilities and unwarranted denials of maintenance and cure by employers or shipowners who are no longer sure of whether the seaman they are treating is injured or milking the injury to ensure a large payout later.

While seaman enjoy their status as wards of the Court, an abuse of that status should not be treated lightly. While Respondent is entitled to the benefit of the bargain for a settlement rightfully obtained, he is not so entitled to enjoy one procured by fraud. Thus, Petitioners request this Honorable Court grant the Motion for Temporary Restraining Order and the requested injunctive relief to allow Petitioners to bring their Motion to Set Aside Settlement Agreement and to Vacate the Order of Dismissal before the Court.

### III.   Entry of the Temporary Restraining Order Should be Without Notice

Under Rule 65 of the Federal Rules of Civil Procedure, a District Court is allowed to issue an *ex-parte* Temporary Restraining Order if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1). Further, the movant's counsel must

certify in writing "any efforts made to give notice and the reasons why it should not be required." *Id*.

Here, Respondent's fraudulent misrepresentations permeated every stage of litigation, so as to induce Petitioners into a settlement. The facts herein show that there has been immediate and irreparable financial harm to Petitioners. The newly discovered evidence uncovered by Petitioners undermines the veracity of Respondent's representations and is discordant with Florida's, and this Court's, public policy favoring out-of-court settlements.

Respondent is a citizen of and currently residing in the foreign country of Colombia. On January 15, 2025, shortly after Respondent ended his relationship with Ms. Gamboa, she contacted Petitioners to report Respondent's fraud and misrepresentation during the course of Respondent's lawsuit. *See* Ex. D, generally. Based on this newly discovered information, Petitioners intend to file a Motion to Set Aside the Settlement and for relief from the Court's final judgment with prejudice for fraudulent inducement and fraud on the court to preserve the *status quo ante* pending this litigation. Petitioners certify a deep concern that upon notice of Petitioners' intentions, Respondent will dissipate all available funds outside the jurisdiction of the United States. Thereby preventing a satisfactory judgment in equity and succeeding in his fraudulent scheme. Considering the speed of digital banking, it is imperative to freeze Respondent's assets to maintain the *status quo* to avoid dissipation of the money outside of the jurisdiction of the United States.

Given Respondent's apparent fraud and disregard of the Court's integrity, it is likely that if he were to be given notice of the impending motion practice, Respondent would immediately move his money to Columbia and away from this Court's Jurisdiction, leaving Petitioners and this Court without any recourse for the fraud which was perpetuated. Respondent has intentionally defrauded Petitioners and this Court into believing he was a partial paraplegic in order to induce a highly

inflated settlement based on his alleged status as a seaman. Given the severity of Respondent's initial scheme and the massive amount of prejudice Petitioners have suffered, it is likely that given the chance, Respondent would take all of the money and run. As such, Petitioners request that this Honorable Court enter the Temporary Restraining Order without Notice to Respondent to ensure no further prejudice is suffered by Petitioners.

### IV. CONCLUSION

The harms alleged in the instant Motion, as well as the facts set forth in Petitioners' supporting Affidavits, show that Petitioners were induced to settle with Respondent because he fraudulently misrepresented the extent and duration of his injuries. Thus, in equity and good conscience, Respondent should not be permitted to reap the benefit a bargain fraudulently begotten and an a Temporary Restraining Order without notice is required.

WHEREFORE, Petitioners respectfully request that this Court find that Petitioners have satisfied the requirements for preliminary injunctive relief and that the Court enter a Temporary Restraining Order without notice against Respondent, RAFAEL DE JESUS RINCONES BOHORQUEZ, freezing his assets -- including the Wells Fargo account which RAFAEL DE JESUS RINCONES BOHORQUEZ keeps any portion of the funds -- to preserve the status quo ante pending the full adjudication of Petitioner's claims.

Date: January 27, 2025
     Miami, Florida

                                                       Respectfully submitted,

                                                       /s/ Brasilia Echevarria
                                                    **DAVID J. HORR**
                                                    Florida Bar No.: 310761
                                                    dhorr@admiral-law.com
                                                    **BRASILIA ECHEVARRIA**
                                                      Florida Bar No.: 121828
                                                    bechevarria@admiral-law.com

**JACOB P. IRMEN**
Florida Bar No.: 1049221
jirmen@admiral-law.com
**HORR, SKIPP & PEREZ, P.A.**
Two Datran Center, Suite 1700
9130 S. Dadeland Boulevard
Miami, FL 33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
*Attorneys for Petitioners/Defendants*